**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO.:

JASMIN WHITE,

Plaintiff,

v.

PUBLIX EMPLOYEES FEDERAL
CREDIT UNION,
a Federally Insured Non-Profit
Financial Cooperative,

Defendant.
___________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**DECLARATORY RELIEF REQUESTED**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiff, JASMIN WHITE ("Ms. White" or "Plaintiff"), by and through her undersigned counsel, files this Complaint against Defendant, PUBLIX EMPLOYEES FEDERAL CREDIT UNION ("PEFCU" or "Defendant"), a federally insured non-profit financial cooperative, and in support thereof alleges as follows:

1. Plaintiff brings this action for interference and retaliation in violation of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("the FMLA"), and for discrimination and retaliation under the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Chapter 760 of the Florida Civil Rights Act ("FCRA"), to recover from Defendant back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, front pay, declaratory relief, injunctive relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**PARTIES, JURISDICTION, AND VENUE**

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1337 and the FMLA, and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201, *et seq*.

3. This Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331, as they arise under 42 U.S.C. § 12101, *et seq*.

4. This Court also has supplemental jurisdiction over Plaintiff's FCRA claims, as they arise out of the same operative facts and circumstances as her FMLA/ADA claims.

5. At all times relevant hereto, Plaintiff was an employee of Defendant as defined by the FMLA, the ADA, and the FCRA.

6. Defendant is a federally insured non-profit financial cooperative that maintains its principal location and does substantial business in Lakeland, Polk County, Florida, and is therefore within the jurisdiction of this Court.

7. Plaintiff worked for Defendant in Polk County, Florida, and therefore the proper venue for this case is the Tampa Division of the Middle District of Florida.

8. At all times relevant hereto, Defendant was an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce which employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

9. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that she: (a) suffered from a serious health condition or conditions as defined by the FMLA, necessitating Plaintiff to take FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise her rights to FMLA leave.

10. Plaintiff is a disabled female. At all times material, Plaintiff was protected during her employment with Defendant by the FCRA and ADA because:

a. Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of her disabilities or "perceived disabilit(ies)" by Defendant; and

b. Plaintiff was retaliated against and suffered adverse employment action and was subjected to an increasingly hostile work environment as

a result of her disabilities or "perceived disabilit(ies)."

11. Defendant was at all times relevant an "employer" as envisioned by the ADA as well as by § 760.02(7), Fla. Stat.

## CONDITIONS PRECEDENT

12. On or around January 27, 2026, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging disability discrimination and retaliation based on disability against PEFCU.

13. More than 180 days have passed since the filing of the Charge of Discrimination.

14. On June 13, 2026, the EEOC mailed Plaintiff a Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on her claims within 90 days of her receipt of the same.

15. Plaintiff timely files this action within the applicable period of limitations against Defendant.

16. All conditions precedent to this action have been satisfied and/or waived.

## **FACTUAL ALLEGATIONS**

17. Plaintiff worked for PEFCU, most recently as a Deposit Services Representative, from February 14, 2022, until her termination on September 22, 2025.

18. Unfortunately, in January of 2025, Ms. White began to experience flareups of disabilities and serious health conditions, specifically migraine headaches and neurological and sensory challenges.

19. Shortly thereafter, Ms. White therefore applied and was approved for intermittent FMLA leave to treat and address future flareups of her disabilities and serious health conditions.

20. Ms. White asked PEFCU for the reasonable, non-burdensome accommodation of brief periods of leave, or early departures from or late arrivals to the office, in order to treat and address flareups of her disabilities.

21. Almost immediately, Ms. White's newly-appointed PEFCU Manager, Ms. Autumn Beavers, began issuing Ms. White spurious, pettifogging writeups for alleged "service failures."

22. One such writeup, issued on February 7, 2025, accused Ms. White of somehow having failed to provide proper service to customers in October and

November of 2024, which predated Ms. Beavers' employment with PEFCU and were therefore obviously fictional.

23. These actions by PEFCU constituted unlawful FMLA interference, and discrimination based on disability.

24. Indeed, PEFCU Director Dalicia Stills-McDougal candidly admitted to Ms. White that Ms. Beavers had simply fabricated these so-called writeups, and assured Ms. White that any writeups issued prior to February 7, 2025, would be expunged from PEFCU's records.

25. Undeterred, in March of 2025, Ms. Beavers issued yet another alleged "service failure" writeup to Ms. White.

26. When Ms. White checked the dates of the alleged issues, she noted that Ms. Beavers had written her up for dates on which she had availed herself of FMLA leave in order to treat and address flareups of her disabilities and serious health conditions.

27. Ms. Beavers also created her own spreadsheet, outside of PEFCU's formal, recognized systems, to track FMLA utilization by Ms. White and other employees, which constituted a clear and vindictive act of FMLA interference and disability discrimination.

28. On one occasion in the Spring of 2025, Ms. Beavers also demanded that Ms. White log in to her physician's patient portal to "prove" that she had attended a

doctor's visit, which was an outrageous HIPAA violation and a shocking act of FMLA interference, FMLA retaliation, and discrimination and retaliation based on disability.

29. In the Summer of 2025, Ms. White emailed Ms. Beavers, Ms. Stills-McDougal, and PEFCU's Vice President of Human Resources to memorialize her formal objections to PEFCU's FMLA interference, FMLA retaliation, disability discrimination, and retaliation based on disability.

30. Ms. White's objections constituted protected activity under the FMLA, the ADA, and the FCRA.

31. Ms. Beavers nevertheless continued to issue Ms. White spurious writeups, again doing so in relation to dates when Ms. White was not even in the office due to utilizing FMLA leave to treat and address flareups of her disabilities and serious health conditions.

32. In August of 2025, Ms. White applied and was again approved for intermittent FMLA leave to treat and address flareups of her disabilities and serious health conditions.

33. On September 17, 2025, Ms. White utilized her approved intermittent FMLA leave to treat and address a flareup of her disabilities and serious health conditions.

34. On September 19, 2025, an irate Ms. Beavers demanded that Ms. White attend an in-person meeting on September 22, 2025.

35. Ms. White attended the meeting on September 22, 2025.

36. During the meeting, Ms. Beavers lambasted and harangued Ms. White for another alleged service failure that had evidently taken place on September 17, 2025, a date on which Ms. White had not even been present, as she had utilized her intermittent FMLA leave that day to treat and address a flareup of her disabilities and serious health conditions.

37. Undeterred, during that same meeting on September 22, 2025, Ms. Beavers and a PEFCU Human Resources Representative, Susan, informed Ms. White that PEFCU had decided to terminate her employment, effective immediately.

38. Defendant's adverse employment actions were taken to interfere with, and in retaliation for, Ms. White notifying PEFCU of her serious health conditions, and in retaliation for Ms. White's utilization or attempted utilization of intermittent leave pursuant to the FMLA in order to address same.

39. Defendant did not have a legitimate, non-discriminatory, non-retaliatory reason for its actions.

40. Any reason provided by Defendant for its actions is a pretext, designed to cover up FMLA interference and retaliation.

41. Defendant's conduct constitutes intentional interference and retaliation under the FMLA.

42. The timing of Plaintiff's use of what should have been job-protected FMLA leave, and Defendant's termination of her employment, alone demonstrates a causal and temporal connection between her protected activity and the illegal actions taken against her by PEFCU.

43. Defendant purposefully and intentionally interfered with and retaliated against Plaintiff for her utilization of what should have been job-protected FMLA leave.

44. Plaintiff's termination was for pretextual, retaliatory, and discriminatory reasons, including, but not limited to, her disclosure to PEFCU of her disabilities and serious health conditions, her requiring and requesting the reasonable, non-burdensome accommodation of brief periods of leave, or early departures from or late arrivals to work to treat and address her disabilities, and her utilization or attempted utilization of what should have been job-protected FMLA leave in order to treat and address the disabilities and serious health conditions.

45. Such a discriminatory and unlawful discharge is exactly the type of adverse employment action that the ADA, the FCRA, and the FMLA were intended to prevent.

46. The timing of Plaintiff's termination makes the causal connection between her disclosure of her serious health conditions, her use or attempted use of FMLA leave, and her termination sufficiently clear.

47. As a result of the foregoing, Defendant interfered with Plaintiff's FMLA rights.

48. The facts surrounding Plaintiff's termination also create a strong inference of disability discrimination and retaliation based on disability in violation of the ADA/FCRA.

49. PEFCU was aware of Plaintiff's ADA/FCRA-protected disabilities and her requests for reasonable, non-burdensome accommodation for same.

50. Ms. White is an individual with disabilities who was nevertheless fully capable of performing the essential functions of her job, and had done so for several years.

51. PEFCU, however, being well aware of Plaintiff's conditions, discriminated and retaliated against Plaintiff for taking time off work to seek treatment and to ride out flareups of her conditions.

52. In reality, Defendant's termination of Ms. White stemmed from its discriminatory animus toward her disclosure of her disabilities and serious health conditions, or what PEFCU perceived to be Plaintiff's disabilities, and toward her

requests for reasonable, non-burdensome accommodation of her disabilities and serious health conditions.

53. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADA and the FCRA.

54. In short, Defendant discriminated against Ms. White based solely upon her disabilities, and retaliated against her for her requests for the reasonable, non-burdensome accommodation of occasional absences from work and/or late arrivals to or early departures from work to treat and address flareups of her disabilities.

55. At all times material hereto, Plaintiff was ready, willing, and able to perform her job duties, and otherwise qualified for her position, with reasonable accommodation.

56. Pleading in the alternative, Defendant perceived Plaintiff as being "disabled," and therefore unable to perform the essential functions of her position, despite the fact that Plaintiff could perform same with or without reasonable accommodation.

57. Pleading in the alternative, Plaintiff's impairments did not substantially limit a major life activity but were treated by Defendant as if they did.

58. Pleading in the alternative, Plaintiff's medical conditions constituted impairments that limited a major life activity only because of Defendant's attitude toward the impairments.

59. Pleading in the alternative, Plaintiff had no impairment whatsoever, but was treated by Defendant as having a disability or disabilities as recognized by the ADA/FCRA.

60. Ms. White was a disabled individual, or otherwise perceived as disabled by Defendant, during her employment. Therefore, she is a protected class member as envisioned by the ADA and the FCRA.

61. Ms. White suffered sufficiently severe and pervasive treatment, and ultimately termination, because of her disability and/or "perceived disability," and because of her requiring and requesting reasonable, non-burdensome accommodation for same.

62. As a result of Defendant's unlawful and discriminatory termination of her employment, Plaintiff has suffered severe emotional distress, including but not limited to sleeplessness, crippling anxiety, loss of consortium, and family discord.

63. As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which she is entitled.

64. PEFCU lacked a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

65. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

**<u>COUNT I- UNLAWFUL INTERFERENCE UNDER THE FMLA</u>**

66. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 2, 4 through 9, 15 through 21, 23 through 30, 35, 37 through 48, and 61 through 63 of the Complaint, above, as though fully set forth in this Count.

67. At all times relevant hereto, Plaintiff was protected by the FMLA.

68. At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

69. At all times relevant hereto, Defendant interfered with Plaintiff by haranguing her for utilizing or attempting to utilize her approved intermittent FMLA leave, by creating unofficial spreadsheets to track her utilization of her approved intermittent FMLA leave, by demanding access to her private medical information in her physician's patient portal, by issuing her spurious and fictional writeups in relation to alleged service failures that occurred on days when she was out of the

office utilizing approved intermittent FMLA leave, and by not permitting her to exercise her FMLA rights freely.

70. As a result of Defendant's willful and unlawful acts via interfering with Plaintiff for exercising or attempting to exercise her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

71. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff requests that this Court enter an Order awarding her back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

**COUNT II- UNLAWFUL RETALIATION UNDER THE FMLA**

72. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 2, 4 through 9, 15 through 21, 23 through 30, 35, 37 through 48, and 61 through 63 of the Complaint, above, as though fully set forth in this Count.

73. At all times relevant hereto, Plaintiff was protected by the FMLA.

74. At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

75. At all times relevant hereto, Defendant retaliated against Plaintiff by issuing her fictional and spurious writeups and ultimately terminating Plaintiff's employment for utilizing or attempting to utilize what should have been job-protected FMLA leave.

76. Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised or attempted to exercise her rights to take approved leave pursuant to the FMLA.

77. As a result of Defendant's intentional, willful, and unlawful acts by retaliating against Plaintiff for exercising or attempting to exercise her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

78. As a result of Defendant's willful violations of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff requests that this Court enter an Order awarding her back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT III
## DISCRIMINATION UNDER THE ADA BASED ON DISABILITY

79. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 37, 39, 44 through 45, 48 through 63, and 65 of the Complaint, above, as though fully set forth in this Count.

80. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

81. The discrimination to which Plaintiff was subjected was based on her disability and/or "perceived disability."

82. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

83. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

84. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

85. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

86. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT IV
## DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT BASED ON DISABILITY

87. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 37, 39, 44 through 45, 48 through 63, and 65 of the Complaint, above, as though fully set forth in this Count.

88. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the FCRA, Chapter 760, Florida Statutes.

89. The discrimination to which Plaintiff was subjected was based on her disability, or "perceived disability."

90. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

91. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

92. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to section 760.11(5), Florida Statutes.

93. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

**COUNT V**
**RETALIATION UNDER THE ADA**
**BASED ON DISABILITY**

94. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 37, 39, 44 through 45, 48 through 63, and 65 of the Complaint, above, as though fully set forth in this Count.

95. Plaintiff was terminated within close temporal proximity of her requests for reasonable, non-burdensome accommodation relating to her disabilities, and her objections to Defendant's disability discrimination.

96. Plaintiff's requests for accommodation and her objections to Defendant's disability discrimination constituted protected activity under the ADA.

97. Plaintiff was terminated as a direct result of her requests for reasonable accommodation and her objections to Defendant's disability discrimination.

98. Plaintiff's requests for reasonable accommodation, her objections to Defendant's disability discrimination, and her termination are causally related.

99. Defendant's stated reasons for Plaintiff's termination are a pretext.

100. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

101. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

102. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

103. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT VI
## RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT BASED ON DISABILITY

104. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 37, 39, 44 through 45, 48 through 63, and 65 of the Complaint, above, as though fully set forth in this Count.

105. Plaintiff was terminated within close temporal proximity of her requests for reasonable, non-burdensome accommodation relating to her disabilities and her objections to Defendant's disability discrimination.

106. Plaintiff's requests for accommodation and her objections to Defendant's disability discrimination constituted protected activity under the FCRA.

107. Plaintiff was terminated as a direct result of her requests for reasonable accommodation and her objections to Defendant's disability discrimination.

108. Plaintiff's requests for reasonable accommodation, her objections to Defendant's disability discrimination, and her termination are causally related.

109. Defendant's stated reasons for Plaintiff's termination are a pretext.

110. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

111. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

112. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

113. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

DATED this 8th day of September, 2026.

Respectfully Submitted,

***/s/ Tanner M. Borges***
Tanner M. Borges, Esq.
Florida Bar No. 1035473
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: tanner@floridaovertimelawyer.com

*Attorney for Plaintiff*